UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CAMERON JAMES BALL,

Plaintiff,

v.

OFFICER TURNER; OFFICER ROJAS; OFFICER BROOKS; OFFICER MILLER; SERGEANT FULKS; P.A. MALONEY; and ADA COUNTY SHERIFF,

Defendants.

Case No. 1:26-cv-00072-DCN

**INITIAL REVIEW ORDER BY SCREENING JUDGE**

The Clerk of Court conditionally filed Plaintiff Cameron Ball's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1. Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**2. Factual Allegations**

When Plaintiff filed his Complaint in this case, he was a prisoner incarcerated at the Ada County Jail. *Compl.*, Dkt. 3, at 6. He is now incarcerated at the Idaho State Correctional Institution. Dkt. 6.

Plaintiff has a traumatic brain injury, which causes what Plaintiff refers to as "seizures." *Compl.* at 6. Unlike seizures that result in shaking, Plaintiff's seizures make him disoriented, so that Plaintiff does not know what time it is, who he is, where he is, or who is around him. The seizures also cause Plaintiff to fear people. Plaintiff states that when he arrived at the Ada County Jail, "jail staff and medical staff were made aware" of this condition. *Id.* (emphasis in original).

Plaintiff suffered a seizure in June 2025. Plaintiff's cellmates, seeing him huddled between the toilet and the wall, pressed the emergency call button. Defendant deputies Turner and Rojas responded and placed Plaintiff in a white holding cell, which resulted in "sensory deprivation." *Id.*

Confused as a result of his seizure, Plaintiff asked the deputies questions to figure out what was going on. Turner stated, "[W]e have a lot going on right now, you need to get it together." *Id.* at 7. The deputies then left.

Several hours later, Turner returned and asked Plaintiff if he "was ready to return to [his] cell." *Id.* When Plaintiff asked to see a medical professional, Turner told Plaintiff to submit a health services request form, or a "kite," at the kiosk. Plaintiff did not have immediate access to a kiosk while in the white holding cell. Plaintiff was, at some point, taken back to his cell.

Plaintiff submitted several kites about medical treatment and was "eventually" seen by a medical provider. Plaintiff does not know the identity of the provider, but he believes it was either Defendant Maloney or non-defendant Aiotulla. *Id*. at 8. This unidentified provider recommended that Plaintiff be housed in the Health Services Unit, or HSU, which appears to have 24-hour medical staff onsite. Defendant Sergeant Fulks did not follow this recommendation. Plaintiff complained to Defendant Brooks, who did not alter Fulks's decision not to house Plaintiff in the HSU. *Id*.

Plaintiff later suffered another seizure, which made him vomit and lose control of his bowels. When the seizure began, Plaintiff's cellmates were asleep and thus could not call for help. Officer Rojas found Plaintiff after an unidentified amount of time, and jail staff transported Plaintiff to St. Alphonsus Hospital for treatment.

An unidentified medical provider again recommended that Plaintiff be housed in the HSU. Plaintiff states that "security" failed to follow this recommendation for a second time. Instead, Plaintiff was placed in the white holding cell. *Id*. at 9. Plaintiff does not disclose how long he was kept in the white cell before being returned to his regular cell.

Plaintiff filed a grievance about his medical care. Defendants Fulks and Miller responded to the grievances, stating that Plaintiff had received adequate medical care. *Id*. at 9–10. Fulks also told Plaintiff his cellmates could push the emergency button if required, even though those cellmates were asleep during one of Plaintiff's seizures. *Id*. at 10.

Plaintiff alleges that jail medical providers, such as Defendant Maloney, "will only prescribe medical care that does not 'piss off' security or that makes [a] security officer's job[] 'inconvenient' or harder." *Id*. According to Plaintiff, medical providers know that

"they will be 'over-rode' by security" concerns if they provide adequate treatment. *Id*. at 9. Plaintiff also contends that the Ada County Sheriff has a "policy, custom, or practice that denies immediate medical care unless a 'kite' is placed on the kiosk, and then any form of medical care is delayed, even if such a serious medical need is clearly apparent." *Id*.

Plaintiff brings claims against Turner, Rojas, Brooks, Miller, Fulks, Maloney, and the Ada County Sheriff. Plaintiff asserts that Defendants' actions or inaction constituted deliberate indifference under the Eighth and Fourteenth Amendments and also violated the Idaho Constitution. *Id*. at 4, 7–10.

All Defendants except the Ada County Sheriff are sued in their individual and official capacities. The sheriff is sued only in his official capacity. *Id*. at 2–4.

## 3. Discussion

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

### *A. Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which

he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

That is, prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. Further, a defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted). A plaintiff may also

seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Oregon State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

Though Plaintiff has not named Ada County as a Defendant, his allegations tend to show that he might be attempting to assert claims against that entity. To bring a § 1983 claim against a local governmental entity, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices

of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

The Eighth Amendment to the U.S. Constitution, applicable to the States through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement. To state a claim under the Eighth Amendment, a prisoner must plausibly allege that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). That is, a delay in medical treatment can violate an inmate's right to adequate medical care. However, the inmate must establish that the delay caused further harm. *McGuckin*, 974 F.2d at 1060.

Medical malpractice or negligence does not support a claim under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official or medical provider] should have been aware of the risk, but was not, then the [official or provider] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the defendants had

"subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### ***B. The Complaint Fails to State a Plausible Eighth Amendment Claim***

#### i. <u>Claims Against Deputies Turner and Rojas</u>

Plaintiff's claims against Deputies Turner and Rojas are based on their failure to ensure that Plaintiff received emergency medical treatment after his cellmates notified them of Plaintiff's June 2025 seizure.

The Complaint does not plausibly allege that either Turner or Rojas was aware of a substantial risk of serious harm to Plaintiff arising from his medical condition yet deliberately disregarded that risk. Plaintiff alleges vaguely that unidentified jail staff "were made aware of the fact [Plaintiff] has seizures." *Compl*. at 6. But this is insufficient to support a reasonable inference that Turner and Rojas actually knew that Plaintiff's behavior in June 2025 was the result of a medical condition in general or a seizure in particular.

Turner and Rojas arrived Plaintiff's cell to find him "crying[] [and] curled up in a small space." *Id*. at 6–7. Without more specific allegations supporting a reasonable

inference that these Defendants knew Plaintiff's behavior was the result of a medical condition, and was not simply Plaintiff's own choice, a factfinder could not reasonably conclude that these Defendants acted with deliberate indifference. At most, Turner and Rojas might have been negligent in failing to perceive the need for medical treatment, which does not violate the Eighth Amendment. *See Broughton*, 622 F.2d at 460.

ii. Claim Against Deputy Miller

Plaintiff's sole allegation against Defendant Miller is that Miller responded to Plaintiff's grievance about the June 2025 incident.

An official whose only involvement in an inmate's constitutional claim was as a participant in the administrative grievance process generally is not subject to liability under § 1983. For example, an appeals coordinator cannot cause or contribute to a completed constitutional violation that occurred in the past and that is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Accordingly, because Miller's "only role[]" was denying Plaintiff's administrative grievance, the Complaint fails to state upon which relief may be granted against this Defendant. *Shehee*, 199 F.3d at 300.

iii. Claims Against Deputies Fulks and Brooks

Plaintiff contends that Deputy Fulks and Brooks interfered with his medical treatment by following their security concerns instead of the recommendations of two

medical providers to house Plaintiff in the HSU. These claims are implausible for two primary reasons.

First, Plaintiff has failed to plausibly allege that he is at a substantial risk of serious harm from not being housed in the HSU. Plaintiff does not complain of any particular medical treatment that Fulks and Brooks interfered with. Rather, Plaintiff complains of his housing assignment. But prisoners do not have a constitutional right to a certain housing unit or to particular security or custody level classification. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).

It is true that officials may not use security concerns "to override a medical determination that a particular inmate is in need of prompt treatment and must be transported to an appropriate facility." *United States v. State of Mich.*, 680 F. Supp. 928, 1002 (W.D. Mich. 1987). Plaintiff's situation, however, is different. No medical provider ordered an immediate course of treatment that Defendants ignored. Instead, providers merely "recommended" HSU for purposes of monitoring Plaintiff going forward. The Complaint does not plausibly allege that the providers determined housing Plaintiff in the HSU was "medically necessary." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

Second, the Complaint fails to raise a reasonable inference that Defendants Turner and Rojas actually knew that their failure to place Plaintiff in the HSU placed him at a substantial risk of serious harm. Instead, the "obvious alternative explanation" is that these Defendants subjectively believed Plaintiff's placement in the HSU was not medically necessary. *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted). In that event,

Defendants' security concerns remained paramount, and—though they may have acted negligently in failing to perceive the risk to Plaintiff from not being placed in the HSU—they did not act with deliberate indifference.

iv. Claim Against Provider Maloney

The Complaint does not plausibly allege that Maloney provided inadequate medical treatment to Plaintiff. Plaintiff's only claim against Maloney is that Maloney, like other jail medical providers, will not provide treatment that will make deputies unhappy. *Compl*. at 10. This accusation is overly vague and generalized and is not supported by any specific allegations of medical appointments conducted by Maloney or medical treatment provided by Maloney.

v. Claim Against Ada County Sheriff

Plaintiff contends that the Ada County Sheriff follows a policy that does not permit immediate medical treatment when required. *Compl*. at 10–11. But Plaintiff himself acknowledges that, during his second seizure, he was taken to the hospital and provided with immediate treatment. Because the Complaint is internally inconsistent on this basis, it does not state a plausible § 1983 claim against the sheriff. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014) (holding that, where allegations in the complaint were internally inconsistent, the allegations supported, "at best," a "'possible' basis to believe that Defendants [acted unlawfully], not a 'plausible' one."). Further, rather than an Ada County policy or custom, the "obvious alternative explanation" for the events described in the Complaint is that the individual defendants'

independent actions caused the alleged constitutional violations. *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted).

Moreover, Plaintiff's claims against the Ada County Sheriff are for injunctive relief only. *Compl*. at 4, 12. Such claims are moot because Plaintiff is no longer incarcerated at the Ada County Jail. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) ("Johnson was transferred to a federal correctional facility in Washington. Because he has demonstrated no reasonable expectation of returning to [his previous correctional facility], his claims for injunctive relief relating to [that facility's] policies are moot.").

***C. The Complaint Fails to State a Plausible Idaho Constitutional Claim***

Plaintiff also asserts claims under the Idaho State Constitution. As this Court has previously held, however, "Idaho does not recognize a direct cause of action for violations of the Idaho Constitution." *Hill v. Cnty. of Benewah*, No. 2:18-CV-00320-DCN, 2020 WL 1049905, at *7 (D. Idaho Mar. 4, 2020) (unpublished), *aff'd*, 843 F. App'x 975 (9th Cir. 2021). Therefore, Plaintiff's state constitutional claims are implausible and must be dismissed.

**4. Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of

official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory provision Plaintiff alleges has been violated; (6) facts alleging the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. In addition, if Plaintiff names a county entity as a defendant, he must include facts plausibly satisfying the *Monell* requirements, described above.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

**ORDER**

**IT IS ORDERED:**

1. The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above.

2. If Plaintiff does not file a timely amended complaint, or if the amendment does not satisfy Rule 8, this case may be dismissed with prejudice and without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: September 23, 2026

David C. Nye
U.S. District Court Judge